# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:10CV466-GCM-DSC

| | |
|---|---|
| SHEILA M. MEANS,<br>  Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>**Commissioner of Social<br>Security Administration,**<br>  Defendant. | **MEMORANDUM AND RECOMMENDATION<br>AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #9) and "Memorandum in Support ..." (document #10), both filed February 18, 2011; and Defendant's "Motion for Summary Judgment" (document #11) filed April 21, 2011, and "Amended Memorandum in Support... " (document #14) filed April 22, 2011.[1] This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") on May 4, 2006, initially alleging that she became

---

[1] On April 22, 2011, Defendant filed his consent "Motion to Amend His Brief" (document #13). The Court has considered the Amended Brief and accordingly, the Motion to Amend is <u>granted</u>.

disabled on March 21, 2006. Plaintiff's application was denied initially and on reconsideration, and a hearing was held on October 1, 2008 (Tr. 14-49).

On December 12, 2008, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr.5-21). In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. The ALJ also found that Plaintiff suffered osteoarthritis, ankylosing spondylitis[2] and disorders of the ligaments and fascia, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[3] to perform the full range of light[4] work and could perform her past relevant work as a clerical worker. The ALJ found that based on testimony from a Vocational Expert, which was consistent with the Dictionary of Occupational Titles, Plaintiff's past work as a clerical worker was performed at the light semi-skilled level. Accordingly, the ALJ held that Plaintiff was not disabled.

By notice dated July 30, 2010, the Appeals Council denied Plaintiff's request for further administrative review.

---

[2]The form of rheumatoid arthritis that effects the spine. *Dorland's Illustrated Medical Dictionary* (28th ed. 1994) (*Dorland's*).

[3]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[4]"Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

2

Plaintiff filed the present action on September 21, 2010, and assigns error to the ALJ's evaluation of the opinion of her treating physician, Dr. Moshe Usadi. See Plaintiff's "Memorandum in Support ..." at 8-12 (document #10). Plaintiff also assigns error to the ALJ's evaluation of her RFC, her past relevant work, and her prior applications for benefits. Id. at 14-23.[5] The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[5]Plaintiff also assigns error to the hypothetical that the ALJ submitted to the Vocational Expert. Because the ALJ's decision was not based on any of the Vocational Expert's testimony given in response to that hypothetical, this assignment of error should be overruled as moot.

conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether the Plaintiff became "disabled"at any time, as that term of art is defined for Social Security purposes.[6] Plaintiff's first assignment of error concerns the ALJ's evaluation of Dr. Usadi's opinion. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).[7] A treating physician's opinion on the nature and severity of the alleged impairment

---

[6]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

[7]Plaintiff cites in part to an earlier standard of review that was overruled in Sullivan, supra, following an adoption of new rules by the Administration. See Document #9-1 at 13-14, citing Coffman v. Bowen, 829 F.2d 514, 517-518 (4th Cir. 1987) (treating physician's opinion entitled to "great weight," and can only be rejected if there is

4

is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). A treating source's opinion that rests upon a claimant's less-than-candid subjective complaints is entitled to minimal probative value. See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005). Indeed, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Christian v. Apfel, No. 98-1673, 168 F.3d 481, 1998 WL 911720, at *2 (4th Cir. Dec. 31, 1998) (per curiam, unpublished) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1076-77 (7th Cir. 1992)) (internal citation omitted).

On March 17, 2008, Dr. Usadi wrote a "To Whom It May Concern" letter stating, "[Plaintiff] is incapacitated by chronic pain and would benefit from any assistance that might be available to her." (Tr. 344). As the ALJ observed, however, the record contradicts Dr. Usadi's opinion and contains evidence that Plaintiff's daily activities included working part-time. (Tr. 23, 37).

The evidence Plaintiff cites in support of her claims occurred prior to the alleged onset of disability (Tr. 254, 256) or actually supports the ALJ's findings, despite reflecting diagnoses of pain disorders or fibromyalgia. In May 2006, Plaintiff reported that her medications were helpful,

---

persuasive evidence to the contrary in the record); Millner v. Schweiker, 725 F.2d 243, 245-246 (4th Cir. 1984) (same).

although they did not completely relieve her symptoms. (Tr. 247, 297). Moreover, she had no decrease in strength or movement. (Tr. 247). In July, her gait was normal and she had normal range of motion and stability. (Tr. 290). In August, she had no restriction in her neck rotation, ambulated with a smooth gait and her heel-toe walking was intact. (Tr. 306). She had no significant weakness in her lower extremities, and 4/5 strength in her upper extremities. (Tr. 306). Plaintiff presented in November 2007 with a stable cervical spine and was referred to a rheumatologist. (Tr. 363). In July 2008, she was observed to have ongoing symptoms, and was referred for a further MRI. (Tr. 355). In August 2008, Plaintiff had full strength in her extremities, and her MRI showed stable cervical spondylosis without appreciable change. (Tr. 358). After a shoulder injection, she was pain free. (Tr. 358).

The rest of the evidence is consistent with the ALJ's findings. The consultative examination revealed that Plaintiff could sit, stand, move about, lift, carry, handle objects, hear, speak, and travel normally, except for complaints such as occasional swelling of her knees and ankle. (Tr. 270-271). Her gait was normal and she could walk on her heels. (Tr. 271). Her back range of motion was the only limited motion, and it was still at 80 percent. (Tr. 272). Finally, despite complaints of arthritis and/or carpal tunnel in the right upper extremity with constant pain and numbness, she did not exhibit any problems on the day of the evaluation. (Tr. 271).

In June 2006, although Plaintiff had trigger points in her trapezius muscles, the rest of her physical examination was normal. (Tr. 293). In August, she complained of ongoing pain, but performed normal activities of daily living and was able to walk around her neighborhood as a Jehovah's witness advocate with no difficulty or unsteadiness of gait. (Tr. 302). She had full strength in her deltoids, triceps, biceps, wrist extensors, wrist flexors, interosseous musculature, and grip. (Tr. 303). She was not tender to palpation on her cervical, thoracic, or lumbar spine. (Tr.

303). She walked with a normal gait. (Tr. 304). Moreover, she did not report to her orthopaedic clinic for over a year, despite returning at a later time with similar complaints. (Tr. 362). See Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989) (finding plaintiff's failure to seek medical attention or to present any medical evidence from the critical time period "seriously undermines his contention that he was continuously disabled during that time"); Mahoney v. Apfel, 48 F. Supp. 2d 237, 246 (E.D.N.Y. 1999) ("the ALJ is permitted to attach significance to plaintiff's failure to seek medical treatment.") In January 2008, she reported relief from prescription Lyrica, and her fibromyalgia was noted to be controlled adequately. (Tr. 342). Thus, the record reflects that Plaintiff was not "incapacitated" by her symptoms.

Additionally, Dr. Usadi provided no support for his assessment. His "opinion" consisted of a brief letter stating only that he believed Plaintiff was incapacitated by chronic pain. The ALJ was not obligated to afford it controlling weight. 20 C.F.R. § 404.1527. Although Plaintiff emphasizes her ongoing relationship with Dr. Usadi, the length of a treating relationship will not trump inconsistency or insupportability. 20 C.F.R. § 404.1527. SSR 96-2p at *1.

In contrast, the non-examining medical consultant provided specific test results in support of his assessment, and his assessment was consistent with the objective medical evidence in the record. As he noted, while Plaintiff had cervical spinal stenosis and probable complex regional pain syndrome, the consultative examination revealed almost full range of motion in all her joints, a normal gait, ability to stand and heel walk, full strength and adequate grip, and no problems with arthritis or carpal tunnel on the day of the examination. (Tr. 270-272, 281). Cf. Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005)(an ALJ can give great weight to an opinion from a medical expert when the medical expert has thoroughly reviewed the record and the opinion is consistent with other opinions and objective medical evidence in the record).

Accordingly, because the ALJ relied upon permissible reasons in rejecting Dr. Usadi's opinion, Plaintiff's assignment of error should be overruled. See Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178.

Plaintiff next argues that the ALJ erred in formulating her RFC. The Court finds that, to the contrary, the RFC assessed by the ALJ is supported by substantial evidence.

At the hearing stage, the ALJ is solely responsible for determining Plaintiff's RFC, and must consider the functional limitations resulting from Plaintiff's medically determinable impairments. 20 C.F.R. § 404.1546(c); SSR 96-8p. A review of the ALJ's decision demonstrates that the RFC determination is supported by substantial evidence. The ALJ observed that Plaintiff had largely normal physical examinations. He properly credited the medical consultant over the treating physician's opinion that Plaintiff was "incapacitated," while generously determining that Plaintiff was limited to less-than medium work. (Tr. 21-23).

Plaintiff contends that the ALJ was obligated to address all of her nonexertional and exertional capabilities. Yet Plaintiff makes no suggestion as to which nonexertional or exertional limitation was relevant to her claim. In the absence of any evidence of a limitation, the ALJ is obligated to determine Plaintiff does not possess that limitation. SSR 96-8p at *3. Lemken v. Astrue, Civil No. 5:07-CV-33-RLV-DCK, available at 2010 WL 5057130, at *7-*8 (W.D.N.C. July 26, 2010).

The RFC assessment implicitly includes the ALJ's determination that Plaintiff was able to work on a sustained basis. See Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). There is no evidence in the record indicating that Plaintiff could not maintain a full work day or work week. Indeed, she was able to work part-time. (Tr. 23, 37). Moreover, she failed to allege any mental impairment that would cause disruption in her work day. As a result, the ALJ complied with SSR

96-8p.

Plaintiff also argues that the ALJ failed to undertake the proper steps in determining whether she could return to her past relevant work. The ALJ explicitly questioned the VE regarding Plaintiff's past work. (Tr. 45). The ALJ then found, pursuant to the VE's testimony, that Plaintiff's past work as a clerical worker was light and semi-skilled in nature. The VE's testimony was consistent with the Dictionary of Occupational Titles.[8] (Tr. 23). The ALJ then determined that she was capable of light work, based on the record as a whole, and could return to her past work. (Tr. 21-24).

Plaintiff now argues that the ALJ should have more fully explained the mental and physical demands of her prior job. However, she offers no evidence that her prior job involved more than light semi-skilled work. Plaintiff ultimately bears the burden of establishing that she could not return to her past relevant work. See, e.g., Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (noting that Plaintiff bears the burden of production and proof at steps one through four of the disability analysis). As a result, in light of the proper RFC assessment and the proper development of the demands of Plaintiff's prior work, the ALJ correctly determined at step four of the five-step analysis that Plaintiff could return to her past relevant work. See Lemken 2010 WL 5057130, at *8-9 (holding that where the ALJ found Plaintiff was capable of light work, Plaintiff's prior work was not precluded by his RFC, and the ALJ's finding was consistent with Plaintiff's description of his work, the ALJ properly concluded Plaintiff had not met his burden in proving he could not perform his prior work).

Finally, Plaintiff argues that the ALJ should have considered her prior application for

---

[8] Plaintiff has alleged no mental limitations that would prevent her return to semi-skilled work. SSR 96-8p at, *3.

9

disability benefits, pursuant to Acquiescence Ruling (AR) 00-1(4). AR 00-1(4) does not apply to this case where Plaintiff's prior claim was not a final decision by an ALJ or the Appeals Council. AR 00-1(4) at *4. Although the ALJ indicated there was a previous decision made in March 2006, (Tr. 44) Plaintiff has submitted no evidence that it was a final decision. As a result, AR 00-1(4) is inapplicable. More to the point, Plaintiff has not identified any evidence considered in her earlier application which would have resulted in a different outcome in the present application.

Although the medical records establish that the Plaintiff experienced symptoms and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by her combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records and Plaintiff's RFC and his ultimate determination that Plaintiff was not disabled.

## IV. ORDER

**IT IS THEREFORE ORDERED** that Defendant's "Motion to Amend His Brief" (document #13) is **GRANTED.**

## V. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #9) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #11) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; and to the Honorable Graham C. Mullen.

**SO RECOMMENDED AND ORDERED**.

Signed: April 27, 2011

David S. Cayer
United States Magistrate Judge